RECEIVED
IN MONROE, LA

OCT 0 6 2006
AC
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **DARRYL JOHNSON** | **CIVIL ACTION NO. 05-1479** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **COCA-COLA ENTERPRISES INC.** | **MAG. JUDGE MARK L. HORNSBY** |

### RULING

This is an employment discrimination action brought by Plaintiff Darryl Johnson

("Johnson") against his former employer, Defendant Coca-Cola Enterprises, Inc. ("CCE").

Johnson alleges he was subjected to race discrimination in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Louisiana Employment

Discrimination Law, La. Rev. Stat. 23:301, *et seq.* ("LEDL"). Johnson also alleges that he was

retaliated against in violation of Title VII.

Pending before the Court is a Motion for Summary Judgment [Doc. No. 38] filed by CCE.

Johnson has filed a Memorandum in Opposition [Doc. No. 43]. CCE has filed a Reply [Doc. No.

51].

Johnson has also filed a Motion to Strike affidavits [Doc. No. 42] submitted in support of

CCE's Motion for Summary Judgment. CCE has filed a Memorandum in Opposition [Doc. No.

48]. The Court will first address Johnson's Motion to Strike and then address CCE's Motion for

Summary Judgment.

For the following reasons, Johnson's Motion to Strike is GRANTED IN PART AND

DENIED IN PART, and CCE's Motion for Summary Judgment is GRANTED IN PART AND
DENIED IN PART.

## I.    FACTS AND PROCEDURAL HISTORY

Johnson is a Caucasian male.  He was employed at the CCE facility located in Monroe,
Louisiana, from July 6, 1999, until he was terminated on May 28, 2004.

On July 6, 1999, Johnson was hired as Full Service Driver in the Cold Drink Sales
Department.  Johnson was responsible for delivering product to vending machines and collecting
and balancing money from the machines.  Johnson's supervisors were Joey Varnell ("Varnell")
and Landon Franks ("Franks").

On August 27, 2003, Johnson received a written warning for falsifying a sale to a vendor
while completing his end-of-the-day sales report.  Johnson admitted altering sales information to
"even out" what he considered to be company miscalculations of sales.  An investigation by CCE
determined that Johnson was not intentionally stealing.

In early 2004, an On Premises Account Manager ("OPAM") position became available.
OPAMs focus on face-to-face sales to CCE's customers.  A number of employees applied for the
open OPAM position, including Johnson.

On February 1, 2004, Barbara Frano ("Frano"), Manager of the Monroe Cold Drink Sales
Department, and Kenny Robinson ("Robinson"), OPAM Supervisor, selected Full Service Driver
Jerry Hubbard ("Hubbard"), an African-American, for the OPAM position.

On May 24, 2004, Johnson claims he complained to Frano that Hubbard was promoted to
the OPAM position because he is African-American.[1]  Frano claims race was not mentioned in

---

[1]CCE disputes the exact timing (and substance) of this conversation.

2

this conversation. Frano admits she mentioned her conversation with Johnson to Beth Ingram ("Ingram"), Area Human Resources Manager in Monroe, but contends that Johnson made only a general inquiry about training and asked how Hubbard was performing in the OPAM position.

On May 25, 2004, Mark Cowart ("Cowart"), Manager of the Home Sales Department, told Frano he observed some product dumped in the facility dumpster. Frano told Varnell, a Full Service Driver Supervisor, to investigate. CCE and Frano claim she left on vacation the following day.

Varnell examined the discarded product and saw that much of it was still "in-date," which means that the "drink before" date was later than May 25. Discarding in-date product is a violation of company procedure.[2] Varnell asked a checker employee at the gatehouse if he saw who threw away the product. The checker indicated that he thought Johnson had done so. Varnell presented these facts to Ingram. Varnell later spoke with Johnson who admitted throwing away product, but claimed it was out-of-date.

On May 26, 2004, Ingram, Varnell, and Robinson met with Johnson to discuss the situation. Johnson admitted throwing away product, but again claimed it was out-of-date. Ingram also consulted Rona White ("White"), Human Resources Director, regarding whether to terminate Johnson's employment.

On May 28, 2004, CCE terminated Johnson for misappropriation of company resources. On June 24, 2004, Johnson filed a charge of discrimination with the Equal Employment

---

[2]While performing inventory functions on vending machines, Full Service Drivers are supposed to stock the machines with the most recently produced product and return any older product. Older product that is still in-date may be used, and older product that is out-of-date is discarded.

3

Opportunity Commission ("EEOC"), alleging race discrimination and retaliation.

On April 12, 2005, the EEOC issued its "Dismissal and Notice of Rights" form letter, finding that it was "unable to conclude that the information obtained establishes violations of the statutes." [Doc. No. 38, Exh. B].

On July 13, 2005, Johnson filed a petition in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana.

On August 11, 2005, CCE's counsel contacted Johnson's counsel. Johnson's counsel stated he would follow up with correspondence to detail the alleged discrimination, but did not do so.

On August 17, 2005, CCE removed the case to this Court.

On June 23, 2006, CCE filed the pending Motion for Summary Judgment [Doc. No. 38].

On July 21, 2006, Johnson filed a Memorandum in Opposition [Doc. No. 43] and Motion to Strike [Doc. No. 42].

On August 8, 2006, CCE filed a Reply to Johnson's Memorandum in Opposition [Doc. No. 51].

With full briefing by all parties completed, the Court is now prepared to rule on the Motion to Strike and the Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Motion to Strike

A motion to strike an affidavit filed in support of, or in opposition to, a motion for summary judgment is governed by Rule 56(e) of the Federal Rules of Civil Procedure. Rule 56(e), in pertinent part, provides:

4

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed. R. Civ. P. 56(e). The factual averments set forth in an affidavit must be admissible in evidence and cannot be conclusory or based on mere information and belief. *Richardson v. Oldham*, 12 F.3d 1373, 1378-79 (5th Cir. 1994).

## 1. Personal Knowledge

Johnson argues that paragraph 3 of Varnell's affidavit should be stricken because the information contained therein is not within Varnell's personal knowledge. Varnell's affidavit states in pertinent part:

> On May 25, 2004, Mark Cowart was walking to the facility's gatehouse, and he happened to notice a large amount of product (approximately 14 cases) that had been thrown away in the dumpster. He touched the product and noticed that it was still cold, so he knew something was unusual. Mr. Cowart, therefore, took the issue to Barbara Frano who, in turn, asked me to investigate.

[Doc. No. 38, Exh. F, ¶ 3].

Johnson also argues that lines 7 through 10, located on page 20, of Frano's deposition should be stricken because the information contained therein is not within Frano's personal knowledge. In Frano's deposition she states, "I wasn't really part of [Johnson's] termination except for the fact that Mark Cowart brought the cans – told me that there were some cans that were dumped in the dumpster from [Johnson], and at that point I asked Joey [to investigate]." [Doc. No. 38, Exh. E, p. 20, lines 7-10].

The substance of an affidavit must demonstrate the affiant has personal knowledge of the facts contained therein. *Schneider v. OG & C Corp.*, 684 F. Supp. 1269, 1271 n.6 (S.D.N.Y. 1988); *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 315-316 (D.

5

Md. 1983). A district court may disregard or strike only the inadmissible portions without striking the entire affidavit. *W.O. Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 531 (5th Cir. 1992).

The Court finds that paragraph 3 of Varnell's affidavit fails to demonstrate that he has personal knowledge of Cowart's observations on May 25, 2004. If Varnell's affidavit stated he interviewed Cowart directly or learned of his observations through Frano when she asked him to investigate, then Varnell might be able to demonstrate personal knowledge, at least as to what information was provided by others.[3] Instead, the language of paragraph 3 relays the substance of Cowart's observations, but does not demonstrate how Varnell became aware of these alleged facts. Therefore, the Motion to Strike paragraph 3 of Varnell's affidavit is GRANTED, and this paragraph is stricken.

Conversely, Frano's deposition testimony in lines 7 through 10 is admissible because she is testifying only that Cowart communicated his observations to her. *See United States v. Villalta*, 662 F.2d 1205, 1206 (5th Cir. 1981) (holding a witness had personal knowledge to testify about the contents of a conversation since the witness was present during the conversation). Therefore, the Motion to Strike Frano's deposition testimony is DENIED.

## 2. Hearsay

Alternatively, Johnson argues that Frano's deposition testimony in lines 7 through 10

---

[3]In fact, Frano has testified that she relayed the information from Cowart to Varnell. [Doc. No. 43, Exh. 1-B, p. 24, lines 12-20].

should be stricken as hearsay.[4]

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Documents containing hearsay statements that would be inadmissible at trial may not be used in an affidavit to support a motion for summary judgment. *See H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2nd Cir. 1991).

CCE argues that Frano's testimony is not used to establish the truth of Cowart's comments; that is, it is not used to establish that Cowart saw product or believed it to be Johnson's product. Rather, CCE contends Frano's testimony is offered to indicate why Frano commenced an investigation.

The Court concludes that Frano's testimony is not hearsay because it is not offered to prove the truth of the matter asserted. The context of Frano's deposition testimony makes clear it is offered to indicate why Frano commenced an investigation into whether Johnson discarded product that was still "in-date." *See U.S. v. Gonzalez*, 967 F.2d 1032, 1034-35 (5th Cir. 1992) (finding that police officer's testimony concerning comments made by an informant to him about defendant trafficking in large amounts of drugs were not hearsay because the comments were not used to show that the defendant had drugs, but why the officer performed a warrantless entry).

Therefore, Johnson's Motion to Strike Frano's testimony on this basis is also DENIED.

---

[4]Johnson also moves to strike portions of Ingram's deposition testimony as hearsay. However, Johnson does not provide any argument or citation to pertinent portions of Ingram's testimony. Therefore, the Court will not address this contention.

### 3. Contradictory and Inconsistent Statements

Finally, Johnson argues that portions of Varnell's affidavit[5] and Frano's and Ingram's deposition testimony[6] should be stricken because they contradict earlier statements made by CCE to the Louisiana Department of Labor[7] ("LDOL") and the EEOC. Johnson argues that CCE changed its position four times, and, in its final version of events, removed Frano from the investigation and termination process to allow CCE to argue there was no causal connection between Johnson's complaints of discrimination to Frano and CCE's decision to terminate Johnson.[8]

CCE argues the only inconsistency between the facts submitted to the LDOL, the EEOC,

---

[5][Doc. No. 38, Exh. F, ¶ 4-6].

[6][Doc. No. 38, Exh. E, p. 20]; [Doc. No. 38, Exh. C, pp. 27-29].

[7]The LDOL, Winnsboro Job Center, contacted CCE regarding Johnson's termination.

[8]On May 26, 2004, Varnell wrote an email stating that he had asked Johnson if he discarded in-date product and Johnson told him he had not paid attention to the date of the discarded product.

In June 2004, CCE represented to the LDOL that Johnson was terminated based on his admitted negligence in throwing away product that was still fresh: "Mr. Johnson admitted to throwing the product away but said he did not see that it was still in-date." [Doc. No. 42, Exh. 2, p. 2].

On December 28, 2004, in response to a request from the EEOC for information concerning Johnson's charge of discrimination, CCE stated that "Mr. Varnell and Ms. Frano [] checked the inventory numbers on the discarded product and determined that it had in fact come from a machine serviced by Mr. Johnson. At this point, Mr. Varnell and Ms. Frano presented these facts to Ms. Ingram." [Doc. No. 42, Exh. 3, p. 3].

On June 23, 2006, CCE states in the testimony submitted for purposes of summary judgment that Varnell *alone* investigated and reported his findings to Ingram. Frano and Ingram also testify that Frano was on vacation while Varnell investigated which driver was responsible for the discarded product.

8

and the testimony submitted for purposes of summary judgment concerns who informed Ingram of Johnson's acts. CCE claims its position statement to the EEOC was incorrectly made by counsel before Varnell or Frano was interviewed and was thought to be true at the time it was made. The sworn testimony of Varnell, Frano, and Ingram later revealed that only Varnell informed Ingram of Johnson's improper disposal of product. Otherwise, CCE contends the statements are consistent, albeit not identical, and simply contain varying degrees of detail based on the agency to which they were submitted.

CCE also argues there is no legal basis for striking the sworn testimony of Varnell, Frano, and Ingram based on pre-litigation statements (that the witnesses did not subscribe to) made by company representatives.

The Court finds CCE's position statement to the EEOC and the testimony offered for summary judgment are clearly contradictory with respect to Frano's involvement in the investigation of Johnson. However, counsel for the Plaintiff has offered no caselaw, and the Court has found none, that supports striking the sworn testimony of a witness due to inconsistencies with prior, unsworn statements made to an investigating agency. The errors discovered in CCE's position statement were made before this case was filed and have since been clarified by sworn testimony.

Accordingly, Plaintiff's Motion to Strike portions of Varnell's affidavit and Frano's and Ingram's deposition testimony as contradictory and inconsistent is DENIED.

## B. Summary Judgment Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine

9

issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## C.    LEDL Prerequisites to Suit

The LEDL states in pertinent part:

A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action *shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action*, shall detail the alleged discrimination, and *both parties shall make a good faith effort to resolve the dispute prior to initiating court action*.

La. Rev. Stat. 23:303(C) (emphasis added).

CCE first claims Johnson failed to provide written notice of the alleged discrimination. CCE next claims that, even if Johnson's counsel did refer counsel to the EEOC charge, this gesture did not constitute a good faith effort to resolve the dispute before court action.

10

The Court concludes that Johnson met the first requirement of Section 23:303(C) by filing a charge of race discrimination with the EEOC. *See McFarlain v. Carrier Sales & Distribution, L.L.P.*, No. 04-1275, 2005 WL 1994514, at \*3 (W.D. La. Aug. 16, 2005) ("Failure to satisfy the notice component, **unless the plaintiff has filed a charge of discrimination with the EEOC**, warrants dismissal of this claim without prejudice.") (emphasis added).

The Court next concludes that there is at least a genuine issue of material fact whether the parties engaged in good faith settlement efforts. Counsel for both parties have offered competing assertions regarding who was contacted, if at all, and what was discussed prior to Plaintiff's filing of the instant action. Therefore, Johnson's state law discrimination claim should not be dismissed for failure to comply with the statutory prerequisites to suit. CCE's Motion for Summary Judgment on this basis is DENIED.

## D. Race Discrimination Under Title VII and the LEDL

Johnson alleges he was denied a promotion based on his race. Title VII and the LEDL prohibit an employer from discriminating against any person in the terms and conditions of employment because of his race. *See* 42 U.S.C. § 2000e-2; La. Rev. Stat. § 23:332(A)(1).

To establish a claim of race discrimination under Title VII, in the absence of direct evidence, the plaintiff may rely on the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Johnson must first establish a *prima facie* case by showing that (1) he is a member of a protected class, (2) he was qualified for the promotion, (3) he was rejected despite his qualifications, and (4) the position was filled by someone outside his protected class. *See Price v. Fed. Express Corp*, 283 F.3d 715, 720 (5th Cir. 2002).

11

Once a plaintiff's *prima facie* burden is met, the defendant must offer a legitimate, non-discriminatory reason for its adverse employment decision. If the defendant meets its burden,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

The Title VII framework also applies to the analysis of Johnson's state law race discrimination claim as Louisiana courts frequently rely on federal anti-discrimination jurisprudence when interpreting the LEDL. *See Smith v. AT&T Solutions, Inc.*, 90 Fed. Appx. 718, 723 (5th Cir. 2004) (citing *Plummer v. Marriot Corp.*, 94-2025, pp. 6-7 (La. App. 4 Cir. 04/26/95); 654 So.2d 843, 848).

### 1. Prima Facie Case

CCE argues that Johnson cannot meet his *prima facie* burden of establishing that he was qualified for the OPAM position because of the nature of the position and his prior disciplinary violation.

At the *prima facie* stage, an employee-plaintiff is only required to show he met the minimal, objective qualifications for the position. *See Pratt v. City of Houston*, 247 F.3d 601, 606 n.2 (5th Cir. 2001) (holding an applicant who meets the "minimal qualifications" of the position satisfies the qualification element of the *prima facie* case); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001) ("an employee must demonstrate that he meets objective hiring criteria at the prima facie case stage, and the issue of whether he meets subjective hiring criteria

12

is dealt with at the later stages of the analysis"). CCE has offered no evidence of the minimal objective qualifications for the OPAM position. Therefore, the Court finds that Johnson has satisfied this element of the *prima facie* case.

CCE appears to concede that Johnson meets the other requirements of a *prima facie* case since it does not dispute the following facts: 1) he is Caucasian, 2) failure to promote is an adverse employment action, and 3) the position was filled by someone who is not Caucasian. Therefore, the Court finds Johnson has satisfied his *prima facie* burden.

## 2. Legitimate Non-Discriminatory Reason

CCE claims it did not promote Johnson to the OPAM position because he was not qualified and, even if he was, another employee was more qualified. Specifically, CCE contends that Johnson was not promoted because he lacked prior sales experience and had a prior disciplinary record. The Court finds CCE has met its burden of producing a legitimate, non-discriminatory reason for failing to promote Johnson. *See Johnson v. Louisiana*, 79 Fed. Appx. 684, 689 (5th Cir. 2003) ("Basing a promotion decision on an assessment of qualifications will almost always qualify as a legitimate, non-discriminatory reason sufficient to rebut [a plaintiff's] prima facie case.") (quoting *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999)).

## 3. Pretext

Once the employer articulates a legitimate, non-discriminatory reason for its actions, "the inference of discrimination raised by the plaintiff's *prima facie* case drops from the case." *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). The burden shifts to Johnson to demonstrate the proffered rationale is merely pretext for discrimination.

13

Johnson claims he was more qualified than Hubbard, and CCE's stated reasons for failing to promote him are pretextual. To establish pretext, Johnson must show "a difference in his qualifications superior to that of the person selected so apparent as to virtually jump off the page and slap us in the face." *Edwards v. Principi*, 80 Fed. Appx. 950, 952 (5th Cir. 2003) (quoting *EEOC v. Louisiana Office of Community Services*, 47 F.3d 1438, 1455 (5th Cir. 1995) (internal quotations omitted)). To defeat summary judgment, Johnson must show "a trier of fact could find that he was clearly better qualified than the person selected." *Id.* In evaluating a failure to promote claim, the Court will not substitute its own assessment absent such a showing by the plaintiff. *See Odom v. Frank*, 3 F.3d 389, 847 (5th Cir. 1993).

Johnson claims that he was more qualified for the OPAM position[9] and CCE's reasons for preferring Hubbard are weak and conclusory. Frano testified she did not have detailed knowledge about Hubbard's prior sales experience. She also testified that she only reviewed a summary of Hubbard's personnel file. Based on Frano's testimony, Johnson argues the Court should view the hiring decision with skepticism.

Johnson also claims his prior disciplinary violation does not render him less qualified than Hubbard because it was not an intentional act of disobedience or theft. Johnson testifies he repeatedly complained that his handheld computer device was miscalculating the number of drinks sold each day, resulting in unwarranted deductions from his paycheck. He claims his manipulation of paperwork was only to avoid unwarranted deductions from his pay. Ingram

_____

[9]In his deposition testimony, Johnson states "I had just as much experience in that position as he did. . . I worked harder. I done my job better. I done it faster, quicker, less time." [Doc. No. 43, Exh. 1-A, p. 56].

14

admits that Johnson was not intentionally stealing and that once his handheld was replaced no further discrepancies occurred. Therefore, Johnson argues the incident was not a reflection of his ability or qualifications.

CCE claims Johnson was not qualified for the OPAM position, which is customer-contact intensive, because he had been disciplined previously for dishonesty related to a customer account. Since Frano and Robinson were aware of this violation and its serious nature, CCE asserts that this alone rendered him unqualified for the position. CCE also claims Hubbard was better qualified because he had prior sales experience and a positive record at CCE.

Johnson attacks Frano's rationale for favoring Hubbard and disputes the merits of the August 27, 2003 incident, but offers no evidence, other than his subjective opinion, that he was more qualified for the position. His subjective opinion alone does not meet the summary judgment burden of coming forward with "significant probative evidence" to support his claim. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). Conversely, CCE's subjective preference for Hubbard is entitled to weight, absent evidence of discrimination, since an employer has the right to make its own subjective decisions regarding qualifications of applicants for a promotion. *See Barnes v. U.S. Dep't of Navy*, 95 Fed. Appx. 46, 49-50 (5th Cir. 2004).

Therefore, the Court finds that Johnson has not presented a genuine issue of material fact as to whether CCE's reasons for failing to promote him were pretext for discrimination. In these circumstances, a reasonable fact finder would be unable to conclude that Johnson was clearly more qualified than Hubbard.

CCE's Motion for Summary Judgment on Johnson's claim of race discrimination under

15

Title VII and the LEDL is GRANTED.

## E. Retaliation Under Title VII

Johnson also contends that he was terminated in retaliation for his complaints of race discrimination to Frano.

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) that he engaged in activity protected by law, (2) that he suffered a materially adverse action which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," and (3) that there was a causal connection between the participation in the protected activity and the materially adverse action. *Burlington N. and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2416 --U.S.-- (2006); *see also Shackleford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 407-08 (5th Cir. 1999). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Shackleford*, 190 F.3d at 408.

To overcome this retaliatory inference, the defendant must produce evidence of a legitimate, non-retaliatory purpose for the materially adverse action. *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

If the defendant satisfies its burden of production, the plaintiff must prove the employer's stated reason for the materially adverse action was merely pretext for the real, retaliatory purpose. *Id.*

### 1. Prima Facie

CCE does not dispute that Johnson can meet the second prong of his prima facie case because he was terminated. However, CCE contends that Johnson cannot establish the first and third prongs.

16

As to the first prong of his *prima facie* case, Johnson claims that on May 24, 2004, he engaged in protected activity by complaining to Frano that Hubbard received the OPAM position because he was African-American. CCE disputes both the timing and substance of this conversation. Frano testified that, although she had a conversation with Johnson a few days prior to his termination, he did not claim he was denied the promotion to the OPAM position because of his race.

As Johnson and CCE offer competing versions of the substance of the conversation between Johnson and Frano, there is a genuine issue of material fact about whether Johnson engaged in protected activity. Thus, for purposes of summary judgment, Johnson has met his burden as to the first prong of his *prima facie* case.

As to the third prong, CCE argues that Johnson cannot demonstrate there is a causal connection between his termination and his complaint of race discrimination because the principal decision-maker was unaware of any protected activity.[10]

To establish the causation prong of a retaliation claim, "the employee should demonstrate that the employer knew about the employee's protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 n.6 (5th Cir. 2003). However, the standard for establishing the causation element at the *prima facie* stage is much less stringent

---

[10]While CCE further argues that the investigation of discarded product shows CCE was not targeting Johnson, the Court rejects this argument.

17

than a but-for standard. *See Fierros v. Texas Dept. of Health*, 274 F.3d 187, 191 (5ᵗʰ Cir. 2001).

CCE argues that, even if Johnson's allegations regarding the conversation with Frano were true, Ingram, the principal decision-maker, had no knowledge of Johnson's protected activity. While Frano mentioned to Ingram that Johnson had made a general inquiry about training and asked how Hubbard was performing in the OPAM position, CCE argues that Frano never mentioned race nor Johnson's alleged complaint that he was denied the OPAM promotion because of his race. Johnson admits he has no knowledge whether Frano mentioned their conversation to another employee, and no knowledge of the substance of Frano's conversation with Ingram. Therefore, CCE argues Johnson cannot show that Ingram based her decision to terminate him on anything other than his alleged unauthorized destruction of company property.

Johnson responds that the circumstantial evidence of Ingram's knowledge of his protected activity and the temporal proximity between his conversation with Frano and his termination are sufficient to establish a causal connection at the *prima facie* stage.

Circumstantial evidence of awareness of protected activity has been held sufficient to establish the causation element in conjunction with temporal proximity and other pretextual evidence. *See Handzlik v. United States*, 93 Fed. Appx. 15, 18-19, 21 (5ᵗʰ Cir. 2004).[11] While

---

[11]Although the decision-maker in *Handzlik* claimed he learned of the plaintiff's EEOC complaint after he made the decision not to hire her in February of 2000, the plaintiff offered evidence she called him on July 9, 1999, to inquire why she was not being considered for the open position. During that conversation, the plaintiff claimed the decision-maker stated he had heard "talk" about her but could not disclose its nature. The decision-maker later stated he could not recall such a conversation, but that the only "talk" he was aware of was her dismissal from her previous position. The Court reasoned the evidence of a causal connection and retaliation depended on credibility: "Jarvis may have truthfully denied that he knew anything about Handzlik's retaliation complaint. . . But if Jarvis had heard only of Handzlik's incompetence at her other recent post, one would think Jarvis would have expressed that reason for not hiring her

18

Johnson has not offered direct evidence that his protected activity was communicated to Ingram prior to the decision to terminate, the evidence of the timing of his complaint to Frano and her subsequent conversation with Ingram creates uncertainty about the content of their conversation. Further, Johnson's alleged complaint of race discrimination was made days before he was terminated and thus establishes a very close temporal proximity between his protected activity and the materially adverse action.

The evidence of causality in this case depends on credibility. The additional evidence of pretext, discussed below, casts doubt on the veracity of CCE's reason for termination and likewise casts doubt on the credibility of the CCE actors involved. Only a "minimal showing" is necessary to establish a *prima facie* case. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999). For purposes of summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party. A reasonable fact finder could conclude that Ingram was aware of Johnson's protected activity based on the circumstantial evidence of the timing of conversations between both Frano and Johnson and Frano and Ingram, Johnson's termination within days, and the other evidence of pretext. The Court finds that Johnson has met his *prima facie* burden as to the causation prong of his *prima facie* case.

## 2. Legitimate, Non-Retaliatory Reason

The burden now shifts to CCE to produce evidence of a legitimate, non-retaliatory reason for terminating Johnson. *See Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1185 (5th Cir. 1997). CCE argues it fired Johnson for unauthorized destruction of company property. An

---

in his department." *Id.* at 21. Based on these facts, the Court concluded there was "enough uncertainty," to deny summary judgment. *Id.*

employer acts with a legitimate, non-retaliatory reason when it terminates an employee for the unauthorized use of, disposal of, or damage to company property. *See Edwards v. Wal-Mart Stores, Inc.*, 88 F. Supp. 2d 613, 617 (W.D. La. 2000).

CCE has proffered a legitimate, non-retaliatory reason for the challenged employment action, and the burden shifts to Johnson to demonstrate the proffered rationale is merely pretext for retaliation.

### 3. Pretext

Johnson bears the burden of showing that acts of material adversity "would not have occurred 'but for' the protected activity." *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). However, a fact finder can infer a retaliatory motive based on the establishment of the *prima facie* case along with evidence of the falsity of the defendant's proffered explanation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-148 (2000) (holding a fact finder may infer the ultimate fact of retaliation from the falsity of the explanation). If the defendant-employer provides a plausible non-retaliatory reason for the adverse employment action, but the plaintiff is able to "cast doubt" on this explanation, "a plaintiff may withstand a motion for summary judgment without adducing additional, independent evidence of retaliation." *Gee*, 289 F.3d at 348.

Johnson argues he can establish the reason for his termination was pretextual because the termination decision was based on incorrect information and made while the investigation was still ongoing.[12] Johnson claims there are no inventory codes on individual cans of product that

---

[12]Johnson also contends that CCE has offered inconsistent versions of the role of Frano in the investigation.

20

would allow CCE to determine if Johnson threw away the product in question. Therefore, Varnell's assertion that he matched the discarded in-date product to the machines serviced by Johnson is false.

CCE claims Varnell checked the inventory numbers on the discarded product and determined that it came from a machine serviced by Johnson. However, CCE has not offered evidence other than Varnell's assertions to negate Johnson's claims that it is "impossible" to physically trace the discarded product to him. The only information maintained is the type of drink can each driver was handling when the product was returned to the CCE facility for restocking or destruction. Additionally, the product control sheet which was completed by Johnson; authorized by one of Johnson's supervisors, Franks; and confirmed by CCE's afternoon truck checker, John Baker ("Baker"), indicates that the 14 cases of product in question were designated as "out-of-date" and, therefore, destroyed.

In addition to undermining CCE's claims they "traced" the in-date product to him, Johnson offers evidence that the product he discarded was, in fact, out-of-date. Baker was responsible for ensuring that product was properly counted when drivers returned to the facility each day. He testified that he "spot-checked" the cases Johnson returned that day by randomly selecting individual cans and that he confirmed each was out-of-date. Michael Tannehill ("Tannehill"), a CCE salesman who accompanied Johnson on May 25, 2004, as part of the Company's "Driver Appreciation Day," also testified that he helped Johnson unload a machine that was no longer going to be used and saw approximately 30 cans that were out-of-date.

CCE concedes that other employees saw out-of-date product properly thrown away, but argues that Johnson dumped approximately 14 cases (or 336 total cans) on the day in question,

21

and Baker and Tannehill saw only 40-45 cans (assuming they each saw different cans).
Therefore, Johnson cannot show that the remaining product he discarded was out-of-date.

While CCE is correct in asserting that Johnson has not proven all 336 cans were out-of-
date, Johnson has succeeded in offering evidence that suggests at least some of the product he
discarded was out-of-date. CCE has not shown as a matter of law that the remaining in-date
product was traceable to him.

Johnson also claims flaws in the termination decision evidence a pretextual reason for
firing him. Tannehill testified he was contacted by Robinson, one of several persons involved in
the investigation, early on the morning of May 26, 2004, and that Robinson stated that Johnson
"was terminated."[13] Tannehill testified he told Robinson during this conversation that the
product he observed was out-of-date. Johnson claims Robinson did not inform Ingram of
Tannehill's statements when they met later to decide whether to fire him. Based on this
testimony, Johnson argues the decision to terminate him was made while the investigation was
still ongoing, and, therefore, CCE was looking for an excuse to fire him.

CCE counters by disputing the certainty of Tannehill's memory regarding exactly when he
and Robinson spoke on May 26. Since Robinson was unaware of Johnson's alleged protected
activity, CCE argues that his silence at the meeting with Ingram is not evidence of a retaliatory

---

[13]CCE suggests these comments are inadmissible hearsay since they are offered to
establish the truth of the matter asserted under Federal Rule of Evidence 801(c). The deposition
testimony of Tannehill regarding what he was told by Robinson and what he told Robinson in
response presents an issue of double-hearsay. Therefore, each level of hearsay must be
admissible. *See* Fed. R. Evid. 805. Both levels of hearsay are excluded from the definition of
hearsay as party-admissions, since both Robinson and Tannehill were employed by CCE when
the statements were made and both statements were made within the scope of their employment.
*See* Fed. R. Evid. 801(d)(2)(D).

motive.

Johnson has created doubt about whether CCE correctly determined he threw away in-date product. An employer mistake in a termination decision does not automatically equate to pretext without further evidence. *See Lindsey v. Prive Corp.*, 987 F.2d 324, 327-28 (5th Cir. 1993) (holding that civil rights statutes are "not intended to be a vehicle for judicial second-guessing of business decisions, nor [are they] intended to transform the courts into personnel managers"). However, Johnson has presented evidence to suggest that he may not have thrown away in-date product and that CCE's termination decision was made before the investigation concluded.[14] A reasonable fact-finder could therefore conclude that Ingram, the principal decision-maker, acted in retaliation when deciding to terminate him.

## III. CONCLUSION

For the foregoing reasons, Johnson's Motion to Strike [Doc. No. 42] is GRANTED IN PART and DENIED IN PART.

CCE's Motion for Summary Judgment [Doc. No. 38] is GRANTED IN PART and DENIED IN PART. CCE's Motion for Summary Judgment on Johnson's race discrimination claim under Title VII and the LEDL is GRANTED, and it is DISMISSED WITH PREJUDICE. CCE's Motion for Summary Judgment on Johnson's retaliation claim under Title VII is DENIED.

---

[14]While not dispositive, the Court notes that Johnson has presented additional evidence of pretext based on inconsistencies regarding the role of Frano in the investigation.

23

MONROE, LOUISIANA, this _6th_ day of October, 2006.

Robert G. James

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

24